# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON DIVISION

ALLISON MULLINS, on behalf of herself
and all others similarly situated,

       Plaintiff,

v.

KAREN COLE, in her official capacity AS
CLERK OF CABELL COUNTY,

       Defendant.

Civil Action No. 3:16-cv-9918

Hon.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

While residents of the other fifty-five counties in West Virginia are able to register to vote and update their voter registration information using the Secretary of State's online system, voters in Cabell County are being arbitrarily denied this same right. Unlike her counterparts in West Virginia's other fifty-four counties, Defendant Karen Cole ("Defendant" or "Cole"), the Clerk of Cabell County, refuses to register or update the information of voters who submit their applications or update their information through the State's online voter registration system. Cole's actions deny Plaintiff and other would-be voters in Cabell County the equal protection and due process of the law. Voting is a fundamental right which is at the very heart of our democracy. If this Court does not issue a Temporary Restraining Order, Plaintiff and many other voters in Cabell County will be disenfranchised on November 8. Plaintiff therefore respectfully requests that this Court order Defendant Cole to process voter registration applications and changes to voter registration submitted by otherwise qualified voters using the State's online voter registration system, in the same manner that such applications and changes are processed throughout the State.

**BACKGROUND**

In fifty-four of West Virginia's fifty-five counties, people can register to vote using an online voter registration system set up by the Secretary of State. Unfortunately, citizens of Cabell County have thus far been unable to register to vote the same way. This is not due to some strange internet anomaly that only affects Cabell County. Rather, it is because Defendant Karen Cole, the Clerk of Cabell County, has unilaterally refused to accept voter registration applications and changes to voter registration received through the online system.

West Virginia Code § 3-2-5 gives the Secretary of State the authority to "promulgate procedures to permit persons to register to vote through a secure electronic voter registration system." W. Va. Code § 3-2-5(a)(3). It further provides that county clerks "may accept the electronically transmitted signature kept on file with another approved state database for an applicant who applies to register to vote using an approved electronic voter registration system in accordance with procedures promulgated by the Secretary of State." *Id.* at § 3-2-5(c)(4); *see also* W. Va. Code § 3-2-7(b).[1]

In accordance with West Virginia Code § 3-2-5, the Secretary of State created an online voter registration system. The online voter registration program mirrors the paper voter registration card that is used throughout the state. A person can only use the online system to register to vote if they already have a West Virginia driver's license or state identification card and have their signature on file with the West Virginia Division of Motor Vehicles. ("DMV"). In order to complete the online application, applicants must list their name, location, age, citizenship, driver's license number, and the last four digits of their social security number. The computer program then pulls the registrant's signature from that person's DMV file.

---

[1] The fact that the state code makes county participation in the online voting system voluntary is not dispositive of the constitutional issues presented.

Despite the demonstrated security of the system, assurances from the Secretary of State's office regarding the system's security and efficacy, and use of the system by all other fifty-four county clerks in the state, Defendant Cole has refused to process new voter registration applications or updates to voter registration that are completed online. These actions threaten to limit the voting rights of Plaintiff and countless others in Cabell County who are similarly situated.

The Secretary of State's online registration system has been used by more than 56,000 voters since its launch in the fall of 2015. *Online Voter Registration System Sees 56,128 Interactions and 30,111 New Voter Registration Applications in its First Year*, West Virginia Secretary of State (Oct. 3, 2016), http://www.sos.wv.gov/news/topics/elections-candidates/Pages/Online-Voter-Registration-System-Sees-56,128-Interactions-and-30,111-New-Voter-Registration-Applications-in-its-First-Year.aspx. This number includes 30,111 new voter registrations as of September 30, 2016. *Id.* In September 2016 alone, more than 11,000 submissions were made. *Id.* Cabell County is one of the top five counties in the state for the number of prospective voters who have attempted to use the online system. *Id.*

Without action by this Court, Defendant Cole will disenfranchise a yet unknown (to Plaintiff) number of voters. This violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

**ARGUMENT**

I. **DEFENDANT COLE'S ACTIONS ARE UNCONSTITUTIONAL.**

The right to vote is fundamental. No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. And a tight timeframe before an election does not diminish that right.

*League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 229 (4th Cir. 2014) (internal quotation marks and citation omitted).

### A. Voting is a Fundamental Right.

The United States Constitution and West Virginia Constitution both require equal protection of their citizens. In the United States Constitution, equal protection is required by the Equal Protection Clause of the Fourteenth Amendment, which provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. In the West Virginia Constitution, equal protection is provided by Article III, Sections 10 and 17. *See* Syl. pt. 3, *Robertson v. Goldman*, 179 W. Va. 453, 453 (W. Va. 1988).[2] The state requirement for equal protection is even more protective than its federal counterpart. *See Women's Health Ctr. v. Panepinto*, 191 W. Va. 436, 441-42 (1993).

"It is beyond cavil that voting is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "The right to vote freely for the candidate of one's choice is the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). The equal protection guarantees in the United States and West Virginia Constitutions protect citizens from the government unduly infringing upon their fundamental rights. As the

---

[2] The West Virginia Constitution does not contain the phrase "equal protection," but the Supreme Court of Appeals has found that, nonetheless, equal protection "principles are an integral part of [West Virginia's] constitutional law." *Israel v. W. Va. Secondary Sch. Activities Comm'n*, 182 W. Va. 454, 460 (1989); *see also*, *e.g.*, Syl. pt. 3, *Robertson v. Goldman*, 179 W. Va. 453, 453 (W. Va. 1988) ("The concept of equal protection of the laws is inherent in article three, section ten of the West Virginia Constitution, and the scope and application of this protection is coextensive or broader than that of the fourteenth amendment to the United States Constitution."); *Allen v. State of W. Va. Human Rights Comm'n*, 174 W. Va. 139, 149 (1984) ("Equal opportunity in this state is a fundamental principle which has its foundation in" the West Virginia Constitution).

United States Supreme Court has noted on many occasions, "[u]ndoubtedly, the right of suffrage is a fundamental matter in a free and democratic society." *Reynolds*, 377 U.S. at 555.[3]

When a federal court is examining a constitutional challenge to a state's election laws,

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Under this test, the level of scrutiny varies on a sliding scale with the extent of the asserted injury. When, at the low end of the scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788, 788-89 n.9). But when the laws place "severe" burdens on the rights of voters, "the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

---

[3] S*ee also*, *e.g.*, *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983) ("Writing for a unanimous Court in *NAACP v. NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958), Justice Harlan stated that it 'is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the liberty assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.'"); *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("By denying some citizens the right to vote, [durational residence requirements] deprive them of a fundamental political right, preservative of all rights.") (internal quotation marks omitted); *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) ("In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms."); *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 667 (1966) (noting the Supreme Court "long ago . . . referred to the political franchise of voting as a fundamental political right, because [it is] preservative of all rights") (internal citation omitted).

### B. Laws and Actions that Arbitrarily Deny Access to the Franchise from Particular Counties Violate the Equal Protection Clause.

"The right to vote is 'fundamental,' and once that right 'is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment." *Raleigh Wake Citizens Assoc. v. Wake County Bd. of Elections*, 827 F.3d 333, 337 (4th Cir. 2016) (quoting *Bush v. Gore*, 531 U.S. 98, 104-05 (2000)); *see also*, *e.g.*, *Harper v. Va. Bd. of Elections*, 383 U.S. 663, 666 (1966) ("[T]he Equal Protection Clause of the Fourteenth Amendment restrains the States from fixing voter qualifications which invidiously discriminate."). "The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote." *Gray v. Sanders*, 372 U.S. 368, 381 (1963).

In *Bush v. Gore*, the Supreme Court famously struck down the state of Florida's scheme for reviewing and recounting ballots cast in the November 2000 election, thus determining that George W. Bush would become the next President of the United States. 531 U.S. 98 (2000). The Court found that "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Id.* at 104. The Court further found that constitutional problems arise "when a State accord[s] arbitrary and disparate treatment to voters in its different counties." *Id.* at 107 (citing *Gray*, 372 U.S. 368).

In order to comport with the Fourteenth Amendment, "[h]aving once granted the right to vote on equal terms, the state may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Id.* at 104-05. Because the recount system ordered by Florida's state supreme court would differ by county and precinct, the Court held it unconstitutional. *See id.* at 109-110. The Court was concerned that disparities would exist across the state with regard to the standards for accepting or rejecting ballots, the persons who would

count the ballots, and the training, or lack thereof, of the persons who would count the ballots. *See id.* Because of the potential differences throughout the state, the Court found it "obvious that the recount [could] not be conducted in compliance with the requirements of equal protection and due process without substantial additional work." *Id.* at 110.

    **C.    Defendant Cole's Refusal to Process Online Voter Registration Applications Violates the Equal Protection Clause.**

If this Court does not act swiftly to ensure that qualified voters who used the online system by October 18 are able to vote in the general election, Plaintiff and many other voters in Cabell County will be disenfranchised without any justification. This is exactly the type of fundamental right that equal protection guarantees are meant to protect.

    **1.    Voters in Cabell County Have Been Deprived of the the Right to Register to Vote in the Same Manner as All Other Citizens in West Virginia.**

The character of the injury in this case is severe—Defendant Cole has refused to register Plaintiff and many other voters in Cabell County who have submitted their applications online; these voters will be disenfranchised on November 8 due to Defendant Cole's actions. They face this predicament solely because of the county in which they reside. That is, similarly-situated voters throughout the State who registered in all other counties through the online system will be able to participate in the November election, and will not be subject to the additional requirements which Defendant Cole is imposing upon would-be voters in Cabell County. This discrimination based on county of residence is a blatant violation of the equal protection and due process principles underlying the Fourteenth Amendment. *Bush*, along with prior Supreme Court precedent, makes it clear that equal protection under the law requires equal treatment of voters within different counties of a state. *See generally id.*; *Gray v. Sanders*, 372 U.S. 368 (1963).

The fact that there may be no constitutional right to register to vote online specifically is irrelevant. In *Bush*, the Court acknowledged that there is no freestanding constitutional right to vote for members of the Electoral College, but nevertheless held that the *differential treatment* of voters' electoral college ballots, based on the county in which they lived, constituted a violation of Equal Protection guarantees. *Bush*, 531 U.S. at 104. *See also Obama for America v. Husted*, 697 F.3d 423, 434-36 (6th Cir. 2012), *stay denied* 133 S. Ct. 497 (2012) (holding that, while there is no fundamental right to early voting, the state could not permit some voters (*i.e.* military personnel) to vote early, while prohibiting others from casting ballots on the weekend before Election Day). Thus, once the state has established a particular means of registration for its residents—here, via the internet—residents of one county may not be precluded from participating in that method of registration.

    **2.    Defendant Cole's Actions Cannot Be Justified Under Any Standard of Review.**

    **a.  Defendant Cole's Actions Fail Under Strict Scrutiny**

Strict scrutiny is appropriate in this case, because Defendant Cole's actions constitute an absolute denial of the fundamental right to vote from Plaintiff and other online registrants. *See, e.g.*, *Gray*, 372 U.S. at 380 ("[A]ll qualified voters have a constitutionally protected right to cast their ballots and have them counted[.]"); *Lewis v. Canaan Valley Resorts*, 185 W. Va. 684, 691 (1991) ("[W]hen a suspect classification, such as race, or a fundamental, constitutional right, such as speech, is involved, the legislation must survive 'strict scrutiny,' that is, the legislative classification must be necessary to obtain a compelling state interest."); *Cimino v. Bd. of Educ.*, 158 W. Va. 267, 274 (1974).

Defendant Cole simply cannot satisfy her burden of demonstrating that her actions are narrowly tailored to further a compelling state interest. It is possible that Defendant Cole will

claim that she has issues with the security of the online system. However, the facts demonstrate that the Secretary of State's system is secure and has worked well in the other fifty-four counties in West Virginia. There is no evidence to suggest that the online voter registration system is less secure than filling out a paper application. Before accessing the full online registration system, a voter must answer the following questions, which are the same as those found on paper applications: "[1] Are you a citizen of the United States of America and a legal resident of West Virginia? [2] Are you at least 17 years of age and will you be 18 by the next general election? [3] Are you currently under conviction, probation, or parole for any felony, election bribery, or treason? [4] Have you been judged incompetent by a court of competent jurisdiction?" *Register to Vote*, West Virginia Secretary of State, https://ovr.sos.wv.gov/Register/Landing#Qualifications (last accessed Oct. 17, 2016). A person must meet these basic requirements in order to be eligible to vote in West Virginia. *See* W. Va. Code § 3-2-5(b). If a person answers any of these questions in the negative, he or she is unable to continue with the online registration process.

In fact, the online system actually requires more information from prospective voters than paper applications. A prospective voter using the online system must enter the last four digits of his or her Social Security Number *and* a driver's license or state identification number; a prospective voter using a mail-in application must only list one of the two.

Additionally, a majority of U.S. states have enacted similar systems without issue. "As of June 14, 2016 a total of 31 states plus the District of Columbia offer online registration, and another seven states have passed legislation to create online voter registration systems, but have not yet implemented them." *Online Voter Registration*, Nat'l Conf. of State Legislatures (June 14, 2016), http://www.ncsl.org/research/elections-and-campaigns/electronic-or-online-voter-

registration.aspx. There have been no allegations of widespread voter registration fraud due to online voter registration in these states, likely because of the security protocols involved (which mirror the security protocols used by West Virginia's Secretary of State).

Time is also an insufficient reason for Defendant Cole to restrict the voting rights of Cabell County citizens. "The press of time does not diminish the constitutional concern. A desire for speech is not a general excuse for ignoring equal protection guarantees." *Bush*, 531 U.S. at 108; *see also League of Women Voters of N.C.*, 769 F.3d at 229 (stating that "a tight timeframe before an election does not diminish" the right to vote).

### b. Defendant Cole's Actions Fail Under Rational Basis

Even if this Court does not use strict scrutiny to analyze Defendant Cole's actions, it should nonetheless find in favor of the plaintiff. The Secretary of State, who is the statutory supervisory of elections and voter registration in West Virginia, set up a secure online voter registration system, and, with respect to that system, there is no conceivable rational basis for treating voters in Cabell County differently from voters residing elsewhere in the state. Defendant Cole has not, for example, argued that fraud concerns in Cabell County are more significant than anywhere else. Any such argument would be pretextual at best, and simply inadequate to justify denying voters in Cabell County the right to vote. As the Supreme Court has explained,

> A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause. This is an essential part of the concept of a government of laws and not men. This is at the heart of Lincoln's vision of 'government of the people, by the people, [and] for the people.' The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races.

*Reynolds*, 377 U.S. at 568.

County clerks are the statutory guardians of voter registration in their respective counties. They may not unequally apply the law to deprive citizens in one county of a means of accessing the franchise which is freely available elsewhere throughout the State.

## II. ISSUANCE OF A TEMPORARY RESTRAINING ORDER IS THE APPROPRIATE REMEDY.

In order to obtain a preliminary injunction or temporary restraining order, a plaintiff must demonstrate: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *see also League of Women Voters of N.C.*, 769 F.3d at 236; *Hoechst Diafoil v. Nan Ya Plastics*, 174 F.3d 411, 422 (4th Cir. 1999).

### A. Plaintiff is Likely to Succeed on the Merits.

As set forth fully in Section I, *supra*, Plaintiff is likely to succeed on the merits. As the Supreme Court has noted:

> The concept of "we the people" under the Constitution visualizes no preferred class of voters but equality among those who meet the basic qualifications. The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions.

*Gray*, 372 U.S. at 379-80.

### B. Plaintiff and Other Eligible Voters Are Likely to Suffer Irreparable Harm in the Absence of a Temporary Restraining Order.

"Courts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N.C.*, 769 F.3d at 247. Harms that restrict voters' fundamental rights are generally not compensable by monetary damages and are therefore irreparable by nature. Part of the reason for this special treatment is the special importance of the right to vote. As the

Supreme Court has noted, "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964); *see also*, *e.g.*, *Reynolds*, 377 U.S. at 561-62 ("Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."). Money cannot compensate an individual for the loss of a right so fundamental. Part of the reason is also practical. "[O]nce the election occurs, there can be no do-over and no redress. The injury to these voters is real and completely irreparable if nothing is done to enjoin" the state's unequal treatment of voters. *League of Women Voters of N.C.*, 769 F.3d at 247.

In this case, the irreparable nature of the threatened injuries is obvious. Without an injunction, Defendant Cole will exclude qualified voters in Cabell County from voting in the November election. By refusing to register voters who use the online system and refusing to update the information of voters who use the online system, Defendant Cole will disenfranchise a heretofore unknown number of voters on November 8. Under these circumstances, Plaintiff and others affected will suffer actual, imminent, and irreparable harm in the absence of the requested relief.

### C. A Balance of Equities in This Case Leans in Plaintiff's Favor.

The Court must also consider the potential impact which the requested injunction might have upon Defendant Cole and balance that impact with the harms that Plaintiff could suffer should the request be denied. While the absence of an injunction would render Plaintiff and others entirely shut out of the political process on November 8, Defendant Cole is unlikely to

suffer any harm if the injunction is granted. Plaintiff does not request an elaborate change to the rules of any upcoming election, only that her/his voter registration form and those of all other online registrants in Cabell County be processed in the same manner as other online applications around the State. Defendant Cole already has the information from all of these voters. All that an injunction would require is that Defendant Cole process these registrations and changes, instead of sending the registrant a letter and an additional paper registration form.

Indeed, the other fifty-four clerks in West Virginia have had no problem processing the information obtained from the Secretary of State's website. Additionally, although the Clerk of Kanawha County also initially resisted using the online registration system, this was corrected weeks before the primary election in May. *See* Nathan Takitch & Jatara McGee, UPDATE: Voter Registration Over After Online Debacle in Kanawha County, WSAZ (Apr. 19, 2016, 7:39 PM), http://www.wsaz.com/content/news/Online-voter-registration-hits-snag-in-Kanawha-County-375646641.html. There remains plenty of time at this point for Defendant Cole to correct her willful refusal to register these otherwise qualified voters.

### D. The Public Interest Favors Voter Participation.

The public interest in this case is clear: all qualified citizens should be able to cast a ballot on Election Day. The requested injunction will ensure that the citizens of Cabell County are not treated differently than citizens in the rest of the state. Without an injunction, it is possible that numerous voters will be disenfranchised. Cabell County is one of the top five counties for number of prospective voters using the online system. Online *Voter Registration System Sees 56,128 Interactions and 30,111 New Voter Registration Applications in its First Year*, West Virginia Secretary of State (Oct. 3, 2016), http://www.sos.wv.gov/news/topics/elections-candidates/Pages/Online-Voter-Registration-

System-Sees-56,128-Interactions-and-30,111-New-Voter-Registration-Applications-in-its-First-Year.aspx. As of April 4, 2016, the Secretary of State stated that about 1,300 potential voters had been declined by Defendant Cole because of their use of the online registration system. *See* David Gutman, *Kanawha, Cabell County Clerks Refusing Online Voter Registration*, Charleston Gazette-Mail, Apr. 4, 2016, *available at* http://www.wvgazettemail.com/news/20160404/kanawha-cabell-county-clerks-refusing-online-voter-registration. This number is surely even higher today. This means an even larger number of potential voters will be harmed by Defendant Cole's actions absent an injunction than would occur in other counties. Additionally, it is entirely possible that elections could be decided differently because residents in Cabell County were disenfranchised by the defendant.

"By definition, the public interest favors permitting as many qualified voters to vote as possible." *League of Women Voters of N.C.*, 769 F.3d at 247 (internal quotation marks omitted). The public undoubtedly has a "strong interest in exercising the fundamental political right to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Furthermore, "upholding constitutional rights serves the public interest." *Newsom v. Albermarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). On Election Day, West Virginia voters will be casting votes for President, Governor, Attorney General, the House of Delegates, State Senate, and United States Congress, among others. If this Court does not grant an injunction, many citizens will be unable to exercise their fundamental right to participate in our democracy.

## CONCLUSION

The Court should grant Plaintiff's motion for a temporary restraining order and require Defendant Cole to duly register and update registrations for Plaintiff and all other qualified

Cabell County voters who used the Secretary of State's online voter registration system to register for the first time or update their voter registration by October 18, 2016.

Respectfully submitted this 20th day of October, 2016,

By Counsel,

AMERICAN CIVIIL LIBERTIES UNION OF
    WEST VIRGINIA FOUNDATION

/s/ Jamie Lynn Crofts
Jamie Lynn Crofts
West Virginia Bar No. 12730
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 / (304) 345-0207 (f)
jcrofts@acluwv.org

Anthony J. Majestro
West Virginia Bar No.  5165
ACLU of West Virginia Foundation
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Dale E. Ho*
Sean J. Young*
American Civil Liberties Union Foundation, Inc.
125 Broad St., 18th Floor
New York, NY 10004
212-549-2693
dale.ho@aclu.org
syoung@aclu.org

*motions for admission pro hac vice forthcoming

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

At this early point in the case, no attorney has yet made an appearance for the Defendant, Karen Cole, Clerk of Cabell County. However, I hereby certify that on October 20, 2016, I attempted to serve the foregoing Emergency Motion for a Temporary Restraining Order upon the defendant by sending a copy to the following attorney and Defendant Cole's office via facsimile:

Sean K. Hammers
Cabell County Prosecuting Attorney
304-526-8679 (f)

Karen Cole
Clerk of Cabell County
304-526-8632 (f)


/s/ Jamie Lynn Crofts

Counsel for Plaintiff