# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON DIVISION

ALLISON MULLINS, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.

KAREN COLE, in her official capacity AS
CLERK OF CABELL COUNTY,

        Defendant.

Civil Action No. 3:16-cv-9918

Hon.

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiff submits this memorandum of law in support of her motion for class certification and respectfully requests this Court certify Plaintiff's proposed class of all qualified voters in Cabell County who properly used the Secretary of State's online system to submit a voter registration application or update their voter registration information, pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(2).

## BACKGROUND

In fifty-four of West Virginia's fifty-five counties, people can register to vote using an online voter registration system set up by the Secretary of State. Unfortunately, citizens of Cabell County have thus far been unable to register to vote the same way. This is not due to some strange internet anomaly which only affects Cabell County. Rather, it is because Defendant Karen Cole, the Clerk of Cabell County, has unreasonably refused to accept voter registration applications and changes to voter registration received through the online system.

West Virginia Code § 3-2-5 gives the Secretary of State the authority to "promulgate procedures to permit persons to register to vote through a secure electronic voter registration system." W. Va. Code § 3-2-5(a)(3). It further provides that county clerks "may accept the

electronically transmitted signature kept on file with another approved state database for an applicant who applies to register to vote using an approved electronic voter registration system in accordance with procedures promulgated by the Secretary of State." *Id.* at § 3-2-5(c)(4); *see also* W. Va. Code § 3-2-7(b).[1]

In accordance with West Virginia Code § 3-2-5, the Secretary of State created an online voter registration system. The online voter registration program mirrors the paper voter registration card which is used throughout the state. A person can only use the online system to register to vote if they already have a West Virginia driver's license or state identification card and have their signature on file with the West Virginia Division of Motor Vehicles. ("DMV"). In order to complete the online application, applicants must list their name, location, age, citizenship, driver's license number, and the last four digits of their social security number. The computer program then pulls the registrant's signature from that person's file with the DMV.

Despite the security of the system, assurances from the Secretary of State's office regarding the system's security and efficacy, and all other fifty-four county clerks in the state using the system, Defendant Cole has refused to process new voter registration applications or updates to voter registration that are completed online. These actions threaten to limit the voting rights of Plaintiff and countless others who are similarly situated.

The Secretary of State's online registration system has been used by more than 56,000 voters since its launch in the fall of 2015. Online Voter Registration System Sees 56,128 Interactions and 30,111 New Voter Registration Applications in its First Year, *West Virginia Secretary of State* (Oct. 3, 2016), http://www.sos.wv.gov/news/topics/elections-candidates/Pages/Online-Voter-Registration-System-Sees-56,128-Interactions-and-30,111-New-

---

[1] The fact that the state code makes county participation in the online voting system voluntary is not dispositive of the constitutional issues presented.

Voter-Registration-Applications-in-its-First-Year.aspx. This number includes 30,111 new voter registrations as of September 30, 2016. *Id.* In September 2016 alone, more than 11,000 submissions were made. *Id.* Cabell County is one of the top five counties in the state for the number of prospective voters who have used the online system. *Id.*

Without action by this Court, Defendant Cole will disenfranchise a yet unknown (to Plaintiff) number of voters. This violates the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.

## LEGAL STANDARD

In order to meet the requirements of Federal Rule of Civil Procedure 23, Plaintiff must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiff must also qualify under one of the subdivisions of Rule 23(b). Rule 23(b) provides that class certification is appropriate if "prosecuting separate actions by or against individual class members would create a risk of [] inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[,]" Fed. R. Civ. P. 23(b)(1)(A), or if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2).

## ARGUMENT

Plaintiff meets the class certification requirements under Rule 23(a) and both Rule 23(b)(1) and (b)(2). This Court should certify a class of all qualified voters in Cabell County who

3

properly used the Secretary of State's online system to submit a voter registration application or update their voter registration information by October 18. This Court should further find that Plaintiff is an appropriate representative for the class. Although "courts have the power to order [preliminary] injunctive relief covering potential class members prior to class certification," *Lee v. Orr*, No. 12-cv-8719, 2013 WL 6490557, at *2 (N.D. Ill. Dec. 10, 2013) (citation omitted), certification is appropriate at this stage. If this Court grants Plaintiff's motion for a preliminary injunction without certifying a class and there is an appeal, and if the Fourth Circuit then holds that Plaintiff's requested injunction is improper without a certified class, certification now would potentially avoid a time-consuming remand—a remand which almost certainly would come too late for the upcoming election. *Cf.* Fed. R. Civ. P. 62.1.

## I. Plaintiff Satisfies the Prerequisites for 23(b)(2) and (b)(1) Class Certification.

Plaintiff requests this Court certify a class of all qualified voters in Cabell County who properly used the Secretary of State's online system to submit a voter registration application or update their voter registration information. This Court should certify Plaintiffs' proposed class pursuant to both Rule 23(b)(2) and (b)(1). Defendants have "acted . . . on grounds that apply generally to the class," Fed. R. Civ. P. 23(b)(2), because every class member has used the Secretary of State's online voter registration system to register to vote or update her voter registration information. Furthermore, absent class-wide treatment, there is a risk that Defendant Cole will be subjected to incompatible injunctions. *See* Fed. R. Civ. P. 23(b)(1).

### A. Numerosity.

The class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability of joinder does not mean that it must be impossible," but "depends on factors such as the size of the class, ease of identifying its numbers and determining their

addresses, facility of making service on them if joined and their geographic dispersion." *Cyrus v. Walker*, 233 F.R.D. 467, 470 (S.D. W. Va. 2005) (Chambers, J.) (quoting in part *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (N.D. W. Va. 1981)). "There is no set minimum number of potential class members that fulfills the numerosity requirement. However, where the class numbers twenty-five or more, joinder is usually impracticable." *Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 12256 (S.D. W. Va. Feb. 3, 2015) (Chambers, J.) (internal citations omitted).

According to the Secretary of State's data, Cabell County is one of the top five counties in the state for number of people who have used the online system to register to vote or update their information. *See Online Voter Registration System Sees 56,128 Interactions and 30,111 New Voter Registration Applications in its First Year*, West Virginia Secretary of State (Oct. 3, 2016), http://www.sos.wv.gov/news/topics/elections-candidates/Pages/Online-Voter-Registration-System-Sees-56,128-Interactions-and-30,111-New-Voter-Registration-Applications-in-its-First-Year.aspx. As of September 30, 2016, over 56,000 prospective voters in West Virginia had used the online system to register to vote or update their voter registration. *Id.* A yet unknown number of these voters reside in Cabell County and have not completed the paper application required by Defendant Cole. As of April 4, 2016, the Secretary of State stated that about 1,300 potential voters had been declined by Defendant Cole because of their use of the online registration system. *See* David Gutman, *Kanawha, Cabell County Clerks Refusing Online Voter Registration*, Charleston Gazette-Mail, Apr. 4, 2016, *available at* http://www.wvgazettemail.com/news/20160404/kanawha-cabell-county-clerks-refusing-online-voter-registration. This number is surely even higher today. And while Defendant Cole could easily identify the parties affected by her actions, Plaintiff is not privy to that information.

### B. Commonality.

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541, 2551 (2011) (internal citation omitted). Commonality is satisfied in this case because all class members raise the same legal question of whether Defendant Cole can, consistent with the Fourteenth Amendment to the United States Constitution, refuse to process voter registration applications and updates received through the Secretary of State's online system. All class members further suffer the same potential injury: being unable to vote on November 8.

### C. Typicality and Adequacy of Plaintiff.

Plaintiff's claims are all "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement mandates that Plaintiffs show (1) that their interests are squarely aligned with the interests of the class members and (2) that their claims arise from the same events and are premised on the same legal theories as the claims of the class members." *Jeffreys v. Commc'ns Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003). Plaintiff's claims and class members' claims are all due to Defendant Cole refusing to accept voter registration applications and updates through the Secretary of State's online system. For this reason, Plaintiff will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (adequacy, typicality, and commonality inquiries tend to "merge"); *General Telephone Co. of Southwest v. falcon*, 457 U.S. 147, 157 n.13 (1982) (same). There are furthermore no antagonistic interests between Plaintiff and the absent class members.

### D. Adequacy of Counsel.

"Finally, under Rule 23(a)(4), . . . [the plaintiff's] legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. Class members' interests will be adequately protected by Plaintiff's counsel, who is experienced in both class action litigation and constitutional litigation.

Class counsel have many years of experience in civil rights and class action litigation. Plaintiffs' attorneys, the American Civil Liberties Union Foundation, Inc. ("ACLU"), has decades of legal experience and knowledge and adequate financial resources to litigate this matter. The ACLU Voting Rights Project in particular has litigated voting rights cases for more than four decades. *See, e.g.*, *McCain v. Lybrand*, 465 U.S. 236 (1984) (reversing judgment below and compelling submission of voting change to Department of Justice for preclearance, vindicating Section 5 of the Voting Rights Act ("VRA")); *Bone Shirt v. Hazeltine*, 461 F.3d 1011 (8th Cir. 2006) (upholding finding of VRA violation); *Large v. Fremont County, Wyo.*, 709 F. Supp. 2d 1176 (D. Wyo. 2010) (finding county's at-large method of electing commissioners diluted Native American voting strength in violation of Section 2 of the VRA). Class counsel have demonstrated a commitment to securing the voting rights of all people and a willingness to litigate voting rights cases vigorously.

Anthony Majestro also has years of experience serving in leadership roles in a number of class actions and other complex cases. Examples include *Morgan v. Bell Atlantic* (Kanawha County, W.Va.), where Mr. Majestro was appointed class co-counsel in this state-wide consumer fraud class action involving inside wire maintenance charges. Mr. Majestro's work on this case included managing the deposition and document discovery as well as briefing and arguing the class and dispositive issues. Mr. Majestro successfully briefed and argued the appeal to the West

Virginia Supreme Court which resulted in a published opinion setting forth new state law in the areas of primary jurisdiction and personal jurisdiction. *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 497 S.E.2d 755 (W. Va. 1997). Mr. Majestro was appointed class co-counsel in *In re Diet Drugs* (Brooke County, W. Va.), a statewide class action against the manufacturers and distributors of the diet drugs Fen-Phen and Redux. Mr. Majestro's work on the case included class discovery and the briefing and arguing many of the jurisdictional, class, and dispositive motions in the case. Mr. Majestro successfully defended two trial court rulings on appeal to the West Virginia Supreme Court. After the state trial court certified a state-wide class and the impending trial of that case was enjoined by the *In re Diet Drugs* M.D.L. Court, Mr. Majestro took the lead role in the briefing and argument challenging the injunction in the United States District Court for the Eastern District of Pennsylvania and the United States Court of Appeals for the Third Circuit. Thereafter, the case was settled on appeal, and Mr. Majestro took the lead role for the plaintiffs in implementing the statewide medical monitoring program which served as a model for the medical monitoring program implemented as part of the national settlement. Mr. Majestro also currently serves as Co-Lead Counsel of the Plaintiff's Steering Committee for the "In re: Water Contamination Litigation" mass litigation before the West Virginia Mass Litigation Panel, concerning the Freedom Industries and West Virginia American Water Company MCHM spill in January 2014 which disrupted water service to a large portion of southwestern West Virginia. *See* In re: Water Contamination Litigation, MLP CA # 16-C-6000 (West Virginia Mass Litigation Panel, Kanawha County, W. Va.). Mr. Majestro's other leadership roles include: *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618 (Okla. 2003); *Community Health Assn. v. Lucent Tech., Inc.* (Kanawha County, W. Va.); *Chase Bank, N.A. v. Bryant* (Kanawha County, W. Va.); *State ex rel. McGraw v. DirectBuy, Inc.* (Kanawha County, W. Va.); *Wilson v. DirectBuy, Inc.*

(D. Conn.); *See Wilson v. DirectBuy, Inc.,* 2011 WL 2050537 (D. Conn. 2011); *Cross Country Bank v. McGraw* (Kanawha County, W.Va.); and *In re Petition of B & H Towing* (S.D. W. Va.).

Mr. Majestro also maintains an active election law practice. He successfully represented Delegate Cliff Moore in an action seeking to force the McDowell County Commission to place Delegate Moore's name on the 2008 primary ballot after his candidate registration had arrived late and was not notarized. In the 2008 election, Mr. Majestro successfully represented the Democratic Party's two nominees for the Supreme Court of Appeals in litigation filed by third parties seeking to overturn provisions in the state election law requiring disclosure of third-party expenditures and electioneering communications. In 2011, representing the Speaker of the House of Delegates, Richard Thompson, Mr. Majestro led the successful efforts to force a special election for Governor in 2011 as a result of the vacancy created by the resignation of Governor Manchin. *See State ex rel. West Virginia Citizen Action Group v. Tomblin,* ___ S.E.2d. ___, 2011 WL 263735 (W.Va. 2011). Mr. Majestro was counsel for one of the candidates for the 2012 Democratic party nomination for a seat on the Supreme Court of Appeals, and most recently assisted one of the current candidates for the 2016 nonpartisan election to the Supreme Court of Appeals with respect to public financing of that election.

Jamie Lynn Crofts is the Legal Director of the American Civil Liberties Union ("ACLU") of West Virginia, an affiliate of the National ACLU. The ACLU of West Virginia is a nonprofit, nonpartisan organization dedicated to the principles of liberty and equality embodied in the United States Constitution, West Virginia Constitution, and our state's and nation's civil rights laws. The ACLU has long been dedicated to protecting the voting rights of American citizens. The ACLU recognizes that the ability to vote for a candidate of one's choice is one of the most fundamental rights in our democracy. As Legal Director, Ms. Crofts oversees all of the

9

actions of the ACLU's legal department, including all legal advocacy and litigation the affiliate engages in. Ms. Crofts is a *cum laude* graduate of Northwestern Pritzker School of Law and a graduate of Lake Forest College. Ms. Crofts is a former law clerk to the Honorable Joseph R. Goodwin in the Southern District of West Virginia and is a member of the bars of the states of West Virginia and Illinois.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for class certification.

Respectfully submitted this 20th day of October, 2016,

By Counsel,

AMERICAN CIVIIL LIBERTIES UNION OF
    WEST VIRGINIA FOUNDATION

/s/ Jamie Lynn Crofts
Jamie Lynn Crofts
West Virginia Bar No. 12730
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 / (304) 345-0207 (f)
jcrofts@acluwv.org

Anthony J. Majestro
West Virginia Bar No. 5165
ACLU of West Virginia Foundation
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Dale E. Ho*
Sean J. Young*
American Civil Liberties Union Foundation, Inc.

125 Broad St., 18th Floor
New York, NY 10004
212-549-2693
dale.ho@aclu.org
syoung@aclu.org

*motions for admission pro hac vice forthcoming


Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

At this early point in the case, no attorney has yet made an appearance for the Defendant, Karen Cole, Clerk of Cabell County. However, I hereby certify that on October 20, 2016, I attempted to serve the foregoing Emergency Motion for a Temporary Restraining Order upon the defendant by sending a copy to the following attorney and Defendant Cole's office via facsimile:

Sean K. Hammers
Cabell County Prosecuting Attorney
304-526-8679 (f)

Karen Cole
Clerk of Cabell County
304-526-8632 (f)


/s/ Jamie Lynn Crofts

Counsel for Plaintiff