IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

ALLISON MULLINS, on behalf of herself and
all others similarly situation,

    Plaintiff,

v.                                                      Civil Action No.: 3:16-cv-09918

KAREN COLE, in her official capacity as
CLERK OF CABELL COUNTY,

    Defendant.

## DEFENDANT, KAREN COLE'S, IN HER OFFICIAL CAPACITY AS CLERK OF CABELL COUNTY, RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

**NOW COMES**, Defendant, Karen Cole, in her official capacity as Clerk of Cabell County and for her response to *Plaintiff's Emergency Motion for a Temporary Restraining Order* states and avers as follows:

### FACTUAL BACKGROUND

Plaintiff, Allison Mullins, on behalf of herself and all others similarly situated has filed her Complaint, Motion for Class Certification and Motion for Temporary Restraining Order against this Defendant seeking declaratory and injunctive relief as well as relief in mandamus pursuant to 42 U.S.C. 1983; 38 U.S.C. 2201 and 2202. (ECF No. 1, 3, 5). Her Complaint arises out of allegations that the Defendant is not processing online voter registration applications in the same manner as other West Virginia Counties. Plaintiff seeks an order ordering Defendant Cole to "process voter registration applications and changes to voter registration submitted by otherwise qualified voters using the State's

1

online voter registration system, in the same manner that such applications and changes are processed throughout the State." (ECF No. 4 at 1).

Plaintiff represents that citizens of Cabell County are unable to register to vote in the same way as other counties as Clerk Cole has refused to accept voter registration applications and changes to voter registration received through the online system. Specifically, Plaintiff alleges that she attempted to update her voter registration online and as opposed to receiving immediate verification that her application was accepted, she was sent a written form from the Clerk of Cabell County requesting that she provide information attesting to her eligibility. (ECF No. 1 at ¶¶ 22-24, ¶ 31). Plaintiff does not state whether she completed the form or returned it to the County Clerk or attempted to register in any other fashion.

Online applications are being processed. However verification of the applicant's eligibility is required in writing after an online application is made, as is the case with determining the eligibility of mail applicants and applications in person. *See Affidavit of Karen Cole* attached hereto as **Exhibit 1**; See also *Written Form* attached hereto as **Exhibit 2.** When an online application is made for registration or change of registration in Cabell County, the application is registered as received and remains pending until eligibility is verified. (Ex. 1). The County Clerk issues a written form to the address provided in the online application and the registration or change in registration is completed when the form is returned. (Ex. 1, 2).

The specific relief sought in the instant Emergency Motion for a Temporary Restraining Order, is an order enjoining Defendant from "refusing to register otherwise qualified voters who used the Secretary of State's online voter registration system to

2

register to vote by October 18, 2016." (ECF No. 3). Acceptance of applications for online voter registration ended on October 18, 2016.

## TEMPORARY RESTRAINING ORDER STANDARD

"A temporary restraining order is an 'emergency procedure and is appropriate only when the applicant is in need of immediate relief.' *Boansi v. Johnson*, No. 2:14-CV-47-BO, 2014 WL 6883133, at *1 (E.D.N.C. Dec. 3, 2014)(Quoting 11A Charles Wright, Arthur Miller & Mary Kane, *Federal Practice and Procedure* § 2951 (2d ed.). "The substantive standard for granting either a temporary restraining order or a preliminary injunction is the same." *Corbett v. Branker*, No. 5:10-CT-3147-FL, 2012 WL 266867, at 1 (E.D.N.C. Jan. 30, 2012). The elemental test for establishing a preliminary injunction is as follows:

> A plaintiff seeking a preliminary injunction must establish that he is <u>likely to succeed on the merits,</u> <u>that he is likely to suffer irreparable harm in the absence of preliminary relief,</u> <u>that the balance of equities tips in his favor,</u> and <u>that an injunction is in the public interest.</u>

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)(Internal citations and quotations omitted). The test is conjunctive in nature, meaning that the Plaintiff must establish all four elements in order to prevail. *Z-Man Fishing Prod., Inc. v. Renosky*, 790 F. Supp. 2d 418, 425 (D.S.C. 2011) (Citing, *Winter*, 129 S.Ct. at 374). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 129 S. Ct. at 376. "Under federal law [temporary restraining orders] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir.

3

1999)(Quoting: *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 94 S. Ct. 1113, 1124 (1974).

## LAW AND ARGUMENT

I. **PLAINTIFF IS UNABLE TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS**

Undoubtedly, the right to vote is fundamental and preservative of all other rights in our republic. *See Reynolds v. Sims,* 377 U.S. 533, 561–62, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (citing *Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)). The Constitution's Elections Clause reserves to the States the general power to regulate "[t]he Times, Places and Manner of holding Elections for Senators and Representatives," subject to laws passed by Congress. U.S. Const. art. I § 4 cl. 1. "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.' " *N. Carolina State Conference of NAACP v. McCrory*, 997 F. Supp. 2d 322, 343–44 (M.D.N.C.), *aff'd in part, rev'd in part and remanded sub nom. League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735, 191 L. Ed. 2d 702 (2015) citing *Burdick v. Takushi,* 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (quoting *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)). The State's power to regulate elections is subject to limits imposed by the Constitution, including the Fourteenth, Fifteenth, and Twenty–Sixth Amendments, and federal law.

In this case, there is no constraint on voting rights. Foremost, there is no constitutional right to register to vote online. Moreover, assuming Plaintiff's allegations in her complaint to be true, there is *less* constraint on Plaintiff's voting rights than is legally permissible in West Virginia counties. Quite simply, there is no constitutional requirement that a county clerk participate in online voter registration. In fact, the laws of West Virginia provide that participation is discretionary not mandatory. W.Va. Code 3-2-5(c)(4). The Plaintiff does not dispute that the act of the Clerk requesting written verification is legal and sets forth no argument that the law permitting the same is unconstitutional. If by its nature the law allows for the variance and the law is not unconstitutional the variance cannot be the basis of an equal protection argument.

The fact that online registration is an option in West Virginia does not form the basis for an equal protection claim. The County Clerk accepts online applications for voter registration as filed on the date they were submitted online. (Ex.1). After receiving the application the Clerk issues a form request for information as authorized by statute. (Ex. 1). The request is granted when the applicant returns the form and they are verified to be eligible to vote. (Ex. 1). There is no dispute that the information requested is not only authorized by statute but is the same information requested of applicants who have applied by mail or in person. All applicants for voter registration are required to provide the same information.

Plaintiff notes that in order to comport with the Fourteenth Amendment, "[h]aving once granted the right to vote on equal terms, the state may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98 (2000). While a true recitation of the case, that is not the right at issue in the

5

matter before the Court. The online registrants are granted the right to vote on the same terms as the applicants by mail and the applicants in person. Their right to vote is not valued over any other.

Plaintiff does not allege that her right to vote has been infringed upon but rather her "equal protection" rights have been violated as she has to jump through an additional hoop for online registration in Cabell County than those voters in other counties in West Virginia because she has to verify her eligibility in writing. Requiring verification of eligibility in writing is the right of the County Clerk. The information sought and the right to the information is lawful and constitutional. The form Plaintiff was requested to complete for approval of her application seeks information that is authorized by statute and the National Voter Registration Act of 1993. W. Va. Code 3-2-5(a); 42 US 1973gg, *et seq*. Other county clerks have the same legal authority to accept the online applications as written or to request written verification. W.Va. Code 3-1-5(c)(4).

The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons. *Personnel Administrator of Mass. v. Feeney,* 442 U.S. 256, 271–272, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979); F.*S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561–562, 64 L.Ed. 989 (1920). "We have attempted to reconcile the principle with the reality by stating that, if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S. Ct.

1620, 1627, 134 L. Ed. 2d 855 (1996) citing *Heller v. Doe,* 509 U.S. 312, 319–320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993).

Plaintiff admits that county participation in the online system is voluntary but states that *that* is not dispositive. (ECF No. 4 at 2). Of course it is dispositive; there is no constitutional right to register to vote online. The fact that it may be easier to vote in one county than another does not support an equal protection claim. The voluntary nature of the online registration process is not a burden to a fundamental right nor does it target a suspect class. Plaintiff does not challenge the right of the government official to request the information sought nor does she challenge the right of the governmental official to request the information in the manner in which she is requesting it.

Voters in Cabell County have not been deprived of the right to vote in the same manner as all other citizens in West Virginia. Cabell County voters have the assurance that the County has verified the eligibility of voters in the County and did not limit its verification to individuals registering in person but also verified the eligibility of online applicants. The Cabell County Clerk is authorized and required by the legislature to be responsible for the administration of voter registration within the county and to establish procedures and practices which "ensure the full implementation of the requirements of federal and state laws and rules relating to voter registration[.]" W.Va. 3-2-4(d).

The Secretary of State is authorized to "promulgate procedures" to permit persons to registration to vote through a secure electronic voter registration. W.Va. Code 3-2-5. In authorizing the Secretary of State to promulgate such procedures, the legislature did not abrogate the Clerk's duties to ensure that the requirements of federal and state laws and rules relating to voter registration were followed. Information

provided to the county clerks from the Secretary of State's office with respect to online applications is the applicants: name; date of birth; residential address; DMV/State Identification number; last four digits of their social security number; and party affiliation.

In endorsing the veracity of the information submitted an applicant, under the penalty of perjury, is required to attest to the eligibility to register to vote and to the truth of the information given. W.Va. Code 3-2-5(c)(4). The legislature did not, however, enact legislation which required county clerk's to accept the electronically submitted signatures. "The clerk *may* accept the electronically transmitted signature kept on file with another approved state database for an applicant who applies to requester to vote using an approved electronic voter registration system in accordance with procedures promulgated by the Secretary of State." *Id.* While Plaintiff represents that no other county clerk requires verification of the information in the application, that is not dispositive as what other county clerk's do does not form the basis of a constitutional right to their method.

In addressing constitutional challenges to specific provisions of a State's election laws "a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the

reviewing court in a position to decide whether the challenged provision is unconstitutional." *Anderson v. Celebrezze*, 460 U.S. 780, 789–90, 103 S. Ct. 1564, 1570, 75 L. Ed. 2d 547 (1983) *Citing Williams v. Rhodes, supra,* 393 U.S., at 30–31, 89 S.Ct., at 10; *Bullock v. Carter, supra,* 405 U.S., at 142–143, 92 S.Ct., at 855; *American Party of Texas v. White,* 415 U.S. 767, 780–781, 94 S.Ct. 1296, 1305–1306, 39 L.Ed.2d 744 (1974); *Illinois Elections Bd. v. Socialist Workers Party,* 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979).

The Supreme Court has articulated a "flexible standard" to apply when considering challenges to state election law: A court ... must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* at 434, 112 S.Ct. 2059 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983)). In practice, the level of scrutiny into a challenged election law varies based on the severity of its constraint on voting rights. "[S]evere restriction[s]" must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992).

While a plaintiff may state an equal protection claim by alleging that lack of statewide standards results in a system that deprives citizens of the right to vote based on where they live here the standards are the same but rather Plaintiff complains of an extra step of verification than those applying online. *League of Women Voters of Ohio*

9

v. *Brunner*, 548 F.3d 463, 477–78 (6th Cir. 2008). "[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Reynolds,* 377 U.S. at 567–68, 84 S.Ct. 1362; *Wesberry v. Sanders,* 376 U.S. 1, 7, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *Gray v. Sanders,* 372 U.S. 368, 380, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963). Plaintiff does not argue that participation is limited.

There is no constitutional right to apply to register to vote online or to change one's registration online, nevertheless Plaintiff seeks an injunction which would enjoin Defendant from requesting online applicants for verification of the information required to establish eligibility and instead to immediately grant the application or request for change. Plaintiff argues that requiring written verification, which is lawful in West Virginia, violates the equal protection clause contained in the Fourteenth Amendment to the Constitution of the United States because other West Virginia county clerks have not requested written verification from online applicants. Plaintiff does not however challenge the constitutionality of the West Virginia election laws which allow Clerk Cole to request the information in the manner in which she is.

Additionally, as the relief sought is a prohibition from an alleged "refusal to accept" online voter registration applications, injunctive relief is not proper as the deadline for online voter registration passed prior to the filing of the instant Complaint and Motion.

II. **PLAINTIFF IS UNABLE TO DEMONSTRATE THE LIKELIHOOD OF IRREPARABLE INJURY OR THAT THE BALANCE OF HARDSHIPS WEIGHS IN HER FAVOR AS PLAINTIFF MAY STILL YET COMPLETE HER VOTER REGISTRATION APPLICATION AND BECOME REGISTERED TO VOTE IN TIME FOR THE NOVEMBER ELECTION**

Even assuming that the Plaintiff can establish a likelihood of success on the merits, Plaintiff is unable to demonstrate that she has suffered irreparable injury or that the balance of the hardships weigh in her favor. A party seeking a preliminary injunction must show more than a "possibility" of irreparable injury. *Winter v. Nat. Res. Def. Council, Inc.*, 129 S. Ct. 365, 375 (2008). As stated by the United States Supreme Court, "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id*, (emphasis in original).

The Fourth Circuit recently discussed the balancing of hardships and what suffices to establish an irreparable injury in a voting rights case in *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014).

*League of Women Voters* required the Court to determine whether certain provisions of a newly enacted North Carolina law should be enjoined until constitutional challenges to the law were addressed by the Court. The newly enacted legislation among other things, reduced the amount of days available for early voting, expanded allowable voter challengers (those who could observe and challenge voting procedures), eliminated the discretion of county election boards to keep polls open an additional hour on election day, eliminated the right of high schoolers under the age of eighteen to pre-register to vote, and implemented a soft roll out of voter identification requirements despite the fact that the requirements were not scheduled to take effect until the next election. The bill also eliminated same-day voter registration and prohibited the counting of out of precinct ballots. The U.S. Government and various other Plaintiffs sued to enjoin implementation of the bill.

11

The Court determined that five of the challenged provisions should not be enjoined as the Plaintiffs had failed to establish irreparable injury or that the balance of the hardships weighed in their favor. Specifically, with regard to the elimination of the discretion of county election boards to hold the polls open one hour later, the Court held that the Plaintiffs had failed to establish any likely irreparable injury as a result of the provision. The Court held: "[P]laintiffs have failed to show that they will be irreparably harmed by this provision in the upcoming election" in light of the fact that the state board of elections retained the ability to order that polls remain open on election days. *Id,* 769 F.3d 224, 237. In other words, Plaintiffs failed to show that anyone would actually be deprived of the right to vote.

As to the provision concerning allowance for poll challengers and observers, the Court found that "voters in North Carolina and elsewhere have good reason to be concerned about intimidation and other threats to their voting rights." *Id.* However, the Court held that the district court properly found that "'Plaintiffs have provided no basis to suggest that poll observers or any challenger(s) will abuse their statutory power.'" *Id.* In other words as in the instance above, the Plaintiffs failed to offer more than mere speculation that the poll observers would act improperly and thus infringe upon the right to vote.

In regard to the soft roll out of voter identification requirements, the Court also found that the Plaintiffs provided no concrete evidence that anyone would be denied the right to vote in the upcoming election. The bill required voters to present photo identification in the next election but permitted the county election boards to train poll workers and attempt a soft rollout of the provision in the election at issue. Plaintiffs

offered evidence that in the preceding primary election also subject to the soft roll out, that a couple had erroneously been told that they had to produce photo identification in order to be able to vote. The Court found no likelihood of irreparable injury as the evidence proffered by the Plaintiffs showed "that [the] couple was certainly misinformed" however, the Court found no irreparable injury as "that couple was, in fact, allowed to vote." *Id*, 769 F.3d at 237. Thus, there was no showing made that anyone would be denied the right to vote.

As to pre-registration of under-age high school students, the Court found no irreparable harm as the students would not be eligible to vote on election day. Thus, any change in this rule did not actually harm or affect the students' rights to vote in the upcoming election.

Last, concerning the shortening of the time frame for early voting, the Court held that "[w]ere we to enjoin House Bill 589's reduction in early-voting days, early voting would need to begin in approximately two weeks." The Court went on to say, "[w]e conclude that this very tight timeframe represents a burden not only on the State, but also on the county boards of elections" and the "substantial burden to the State tips the balance of hardships in its favor." *Id*, 769 F.3d 224, 236.

Although the Court found an injunction appropriate with regard to the bill provisions eliminating same day voter registration and counting of votes cast outside the proper precinct, the Court's analysis relied upon the Voting Rights Act which is not at issue in this case.

Here, Plaintiff is unable to demonstrate irreparable harm or that the balance of hardships weighs in her favor. Plaintiff claims that "[w]ithout action by this Court,

13

Defendant Cole will disenfranchise a yet unknown (to Plaintiff) number of voters." ECF No. 4 at 3). Essentially, Plaintiff claims that she and others will suffer an irreparable injury because they will not be permitted to vote on election-day. Although the Fourth Circuit discussed what constitutes an irreparable injury in *League of Woman Voters*, it did not have occasion to define it. "An irreparable injury is a harm that is "[i]ncapable of being rectified, restored, remedied, cured, regained, or repaired[.]" IRREPARABLE, Black's Law Dictionary (10th ed. 2014). It is also defined as an injury "that cannot be made right or good." IRREPARABLE, Black's Law Dictionary (10th ed. 2014).

The injury at issue in this case is capable of being rectified by the Plaintiff and the others similarly situated. All online voter applications processed by the appropriate filing deadline are marked as "received" on the date that the online application is made. (Ex. 1). The person applying online is then sent a form to verify the contents of the online application. (Ex. 1). Once the person returns the verification form the person becomes officially registered. (Ex. 1). Essentially, the person filing the online application may submit an application to register to vote up and until the last day of the filing period and then fill out and return the verification form after the last day of the filing period and still become registered to vote for the November election. Thus, because the Plaintiff and others who filed by the appropriate deadline are not being deprived of the right to vote, Plaintiff is unable to show irreparable harm.

Likewise, Plaintiff and others similarly situated have the minimal burden of filling out the verification form and returning it to the clerk. However, should the injunction issue, the Clerk faces the substantial burden of processing every online application

without its contents being verified approximately two weeks before election day. Accordingly, the balance of hardships does not weigh in Plaintiff's favor.

## **CONCLUSION**

In sum, Defendant respectfully requests that this Honorable Court deny Plaintiff's Motion for a preliminary restraining order as Plaintiff has failed to demonstrate a likelihood of success on the merits, that Plaintiff is likely to suffer irreparable injury, or that that balance of hardships weigh in her favor.

KAREN COLE

By counsel

*/s/ Wendy E. Greve*
Wendy E. Greve, Esquire (WVSB #6599)
Jacob D. Layne, Esquire (WSB #11973)

***PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC***
JamesMark Building
901 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-0100
Facsimile: (304) 342-1545

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

ALLISON MULLINS, on behalf of herself and
all others similarly situation,

    Plaintiff,

v.                                     Civil Action No.: 3:16-cv-09918

KAREN COLE, in her official capacity as
CLERK OF CABELL COUNTY,

    Defendant.

## CERTIFICATE OF SERVICE

I hereby certify that on **the 24th day of October 2016**, I electronically filed the foregoing *Defendant Karen Cole's, in Her Official Capacity as Clerk of Cabell County, Response to Plaintiff's Emergency Motion for a Temporary Restraining Order*, with the Clerk of the Court using the CM/ECF system which will send notification of such filing.

Jamie Lynn Crofts
ACLU of WV Foundation
PO Box 3952
Charleston WV 25339

Anthony J. Majestro
ACLU of WV Foundation
Powell & Magestro, PLLC
405 Capitol Street, Suite 9-1200
Charleston, WV 253011

I hereby certify that I have mailed the aforesaid document by United States Postal Service to the following non-CM/ECF participants:

Dale E. Ho
Sean J. Young
American Civil Liberties Union Foundation, Inc.
125 Broad Street, 18th Floor
New York, NY 10004

/s/ *Wendy E. Greve*
Wendy E. Greve, Esquire (WVSB #6599)
Jacob D. Layne, Esquire (WSB #11973)