# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# HUNTINGTON DIVISION

ALLISON MULLINS, on behalf of herself
and all others similarly situated,

        Plaintiff,

v.

KAREN COLE, in her official capacity AS
CLERK OF CABELL COUNTY,

        Defendant.

Civil Action No. 3:16-cv-09918

Hon. Chief Judge Chambers

## REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff filed the instant action on October 20, 2016, with motions for an emergency temporary restraining order and class certification. On October 21, this Court ordered Defendant Cole to respond to the emergency motion for temporary restraining order by October 24 at noon and scheduled a hearing for October 25, at 10:00 AM. On October 24, the Court advised Plaintiff's counsel to file a reply by the morning of October 25.

## BACKGROUND

This is an action pursuant to 42 U.S.C. § 1983 and 38 U.S.C. §§ 2201 and 2202, seeking injunctive and mandamus relief for Defendant Cole's refusal to process voter registration applications received through the West Virginia Secretary of State's online voter registration system. Defendant Cole's actions violate the equal protection and due process of Plaintiff and the putative class. Plaintiff requests this Court grant a Temporary Restraining Order requiring Defendant Cole to register otherwise qualified Cabell County voters who used the online registration system prior to the registration deadline of October 18, ,2016.

## ARGUMENT

I. **Plaintiff Has Shown a Likelihood of Success on the Merits of her Equal Protection Claim.**

When a federal court is examining a constitutional challenge to a state's election laws,

> It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "Under this standard, the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). When, at the low end of the scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788, 788-89 n.9). But when the laws place "severe" burdens on the rights of voters, "the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "Most cases fall in between these two extremes," and a more flexible standard is appropriate. *Obama for America v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012).

A. **Plaintiff and Class Members are Harmed by Being Treated Differently than Other Prospective West Virginia Voters.**

Defendant Cole first argues that because her actions are within her rights under state law, there can be no equal protection violation. *See* Def, Karen Cole's, in Her Official Capacity as

Clerk of Cabell County, Resp. to Pl.'s Emergency Mot. for a Temp. Rest. Order ("Def's Resp."), at 5 ("If by its nature the law allows for the variance and the law is not unconstitutional the variance cannot be the basis of an equal protection argument."). This is patently untrue. "[A] citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). "The Equal Protection Clause applies when a state either classifies voters in disparate ways [] or places restrictions on the right to vote[.]" *Obama for America v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012).

That an equal protection violation can exist through unequal application of state voting law was squarely addressed by the Supreme Court in *Bush v. Gore*, 531 U.S. 98 (2000). In *Bush*, the constitutional violation was not Florida state law—it was that Florida state law was going to be applied differently throughout the state. 531 U.S. at 105. This is because "[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise." *Id.* Defendant Cole is correct that "[t]he fact that online registration is an option in West Virginia does not form the basis for an equal protection argument." Def's Resp. at 5. It is not the fact that online registration is an option in West Virginia that creates the basis for an equal protection claim—it is the fact that this option is being offered to the voters of the 54 other counties in the state but not to the voters of Cabell County. The fact that Defendant Cole is within her rights under state law is not dispositive. It is not a novel concept that actions, as well as laws, can be unconstitutional. *E.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 373-374 (1886); *Bush*, 531 U.S. at 104-06.

Defendant also argues that because there is no constitutional right to register to vote online, Plaintiff's equal protection claim must fail. Again, that is simply untrue. An equal

3

protection violation exists where laws that are neutral on their face are applied in an unequal manner. *Bush*, 531 U.S. at 104-06; *Yick Wo*, 118 U.S. at 373-374 ("Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution."). In *Yick Wo*, there was no constitutional right to operate a laundry business; the constitutional right at issue was the right of citizens to be treated equally under the law. *See id.* Similarly, in *Bush*, the Court noted that "[t]he individual citizen has no federal constitutional right to vote for electors for the President of the United States unless and until the state legislature chooses a statewide election as the means to implement its power to appoint members of the Electoral College." 531 U.S. at 104. Nonetheless, the Court held that "[w]hen the state legislature vests the right to vote for President in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter." *Id.*

Defendant attempts to argue that a rational basis standard should apply to her actions. *See* Def's Resp., at 6. However, "[o]nce a court has determined that a law burdens voters, under *Anderson-Burdick* those burdens must be weighed against the *precise* interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it *necessary* to burden the plaintiff's rights." *Ohio State Conf. of the NAACP v. Husted*, 768 F.3d 524, 545 (6th Cir. 2014) (internal quotation marks omitted) (emphasis in original), *vacated on other grounds* 2014 U.S. App. LEXIS 24472 (6th Cir. Sept. 24, 2014). The analysis in *Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2013) is instructive. At issue in that case was the state of Ohio's decision to extend additional early voting

days to military personnel that were not available to the general public. *See id.* at 427. Early voting is generally a privilege, not a constitutional right. *See id.* Nonetheless, the Sixth Circuit affirmed the injunction granted by the district court. *See id.* at 437. The court noted that "[t]he burden on Plaintiffs' voting rights is surely real[,] but the elimination of in-person early voting during the three-day period prior to the election does not absolutely prohibit early voters from voting." *Id.* at 433. The fact that the plaintiffs were not entirely prohibited from voting or even entirely prohibited from early voting was not dispositive—it merely informed the court as to how to balance the burden on the plaintiffs' rights with the justifications offered by the state. *See id.* at 433-34. The court ultimately found that there was "no reason to provide [other early voters] with fewer opportunities to vote than military voters[.]" *Id.* at 435.

The court also found the result would be "worrisome . . . if states were permitted to pick and choose among groups of similarly situated voters to dole out special voting privileges." *Id.* In that situation, "[p]artisan state legislatures could give extra early voting time to groups that traditionally support the party in power and impose corresponding burdens on the other party's core constituents. To avoid this dangerous result, courts must carefully weigh the asserted injury against the precise interests proffered by the state." *Id.* at 435-36 (internal citations omitted). Other courts have similarly found equal protection violations in voting cases where the right to vote is not being entirely denied. *E.g.*, *Reynolds v. Sims*, 377 U.S. 533, 557-58 (1964); *Harlan v. Scholz*, No. 16 C 7832, 2016 U.S. Dist. LEXIS 132581, at *9-14 (N.D. Ill. Sept. 27, 2016), *stayed pending appeal* (finding an equal protection claim likely of success on the merits where only certain counties in Illinois would offer election day registration to their citizens).

### B. Defendant Cole's Actions Fail the *Anderson-Burdick* Test.

5

Under the *Anderson-Burdick* test, the Court must "consider the character and magnitude of the asserted injury to the" plaintiff and "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. The magnitude of the burden on Plaintiff and class members is extreme as applied to the upcoming general election. Without action by this court, Plaintiff and other class members who properly used the system set up by the Secretary of State will be disenfranchised. Tellingly, the only justification advanced by Defendant Cole is that her actions are permissible under state law. However, the fact that the defendant's actions may be permissible under state code does not render them immune to an equal protection challenge. *Yick Wo*, 118 U.S. at 373-374. Furthermore, state code explicitly permits Defendant Cole to process voter registration applications that she receives online. *See* W. Va. Code § 3-2-5(c)(4). Defendant Cole has simply decided, for reasons unknown to Plaintiff and unarticulated to the Court, that she does not wish to process applications she receives online. Importantly, she has not argued—and cannot argue— that the online system is not secure or that there have been problems with voter fraud in Cabell County or other parts of the state because of it. *See generally* Decl. of Layna Valentine-Brown [Docket 10].

Defendant Cole argues that Plaintiff and others who used the online voter registration system prior to the October 18 deadline can still complete the additional steps that she requires and be permitted to vote on Election Day. *See* Def's Resp., at 14. However, there is nothing on the Secretary of State's website, in the letter that Defendant Cole sends to would-be voters, or on the paper voter registration form which indicates that online registrants who completed the process prior to the deadline will be duly registered. *See* Compl. Ex. 1; Compl. Ex. 2; Def's Resp., Ex. 2. There is nothing in Defendant Cole's affidavit which definitively states that all of

these voters will be registered. *See* Def's Resp., Ex. 1. And there is nothing in state law, Defendant Cole's affidavit, or Defendant Cole's response that indicates the timeframe within which a would-be voter must complete Defendant Cole's additional steps in order to cast a ballot on Election Day. If Defendant Cole receives an application tomorrow, will that voter be able to vote and have her ballot counted? What about next week? November 7? Defendant Cole's additional step creates impermissible confusion for voters and, without action by this court, *will* result in disenfranchisement on Election Day. *Mich. State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656 (6th Cir. 2016) (upholding injunction where the District Court found a state law "would cause voter confusion and thus increase the risk of individuals not having their votes counted"). This type of ad hoc policy, which Defendant Cole has unilaterally imposed on Plaintiff and putative class members, is impermissible under the Equal Protection Clause of the Fourteenth Amendment.

Additionally, while state law does not require Defendant Cole to accept online voter registration applications, nor does it permit her to create additional procedures for would-be applicants. These additional steps are of Defendant Cole's own making. Furthermore, this extra step in the process is, itself, a burden on Plaintiff and class members that Defendant Cole has not justified. The online system requires even more information and the same verification (though electronic) that is required by the paper form. *See* Decl. of Layna Valentine-Brown [Docket 10], at ¶¶ 4-9. Under the *Anderson-Burdick* test, Defendant Cole must offer more than compliance with state law—she must justify her actions and the specific reasons for them, so the court can "determine the legitimacy and strength of each of those interests, [and] consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Anderson*, 460 U.S. at 789. She has not done so.

7

## II. Without Action by this Court, Plaintiff and Putative Class Members Will Suffer Irreparable Harm.

Plaintiff has demonstrated a likelihood of success on the merits of her constitutional claim and therefore has demonstrated irreparable injury. "[T]he denial of a constitutional right, if denial is established, constitutes irreparable harm for purposes of equitable jurisdiction." *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987); *see also*, *e.g.*, *Kikimura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) ("When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (quoting 11A Charles Alan Wright, Arthur C. Miller & Mary Kay Kane, Federal Practice and Procedures § 2948.1 (2d ed. 1995)); *see also Fish v. Kobach*, No. 16-2105-JAR-JPO, 2016 U.S. Dist. LEXIS 64873, at *91 (D. Kan. May 17, 2016) (same), *aff'd* No. 16-3147, 2016 U.S. App. LEXIS 18018 (10th Cir. Sept. 30, 2016); *ACLU v. McCreary County*, 354 F.3d 438, 445 (6th Cir. 2003) ("In other words, the first factor of the four-factor preliminary injunction inquiry—whether the plaintiff shows a substantial likelihood of succeeding on the merits—should be addressed first insofar as a successful showing on the first factor mandates a successful showing on the second factor--whether the plaintiff will suffer irreparable harm."); *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. N.C. 1978) ("Violations of first amendment rights constitute per se irreparable injury."); *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 302-03 (D.C. Cir. 2006) ("[W]e are able to conclude that where a movant alleges a violation of the Establishment Clause, this is sufficient, without more, to satisfy the irreparable harm prong for purposes of the preliminary injunction determination."); *Joelner v. Village of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor."); *Hughbanks v. Dooley*, 788 F. Supp. 2d 988, 998 (D.S.D. 2011) ("[Plaintiff's] allegation that his due process

rights are being violated by the current notice policy is sufficient to establish a threat of irreparable harm"); *Bailey v. Rubenstein*, No. 2:08-cv-01204, 2009 U.S. Dist. LEXIS 32192, at *9 (S.D. W. Va. Apr. 15, 2009) (finding that if the plaintiff "successfully shows that the regulations do deprive him of his [constitutional] rights, then he will also have demonstrated his irreparable injury"). Because Plaintiff has demonstrated a likelihood of success on the merits, she has also demonstrated that she will suffer irreparable harm absent an injunction.

In *Obama for America*, the Sixth Circuit held that the injury to the plaintiffs was irreparable, stating: "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages. When constitutional rights are threatened or impaired, irreparable injury is presumed. A restriction on the fundamental right to vote therefore constitutes irreparable injury." 697 F.3d at 437. As discussed *supra*, at issue in *Obama for America* was early voting, which is not itself a constitutional right. *See id.* It was irrelevant to the court's irreparable harm analysis that plaintiffs could still vote early on certain days or cast a ballot on Election Day itself. *See id.* The Fourth Circuit cited to *Obama for America* when making the statement in *League of Women Voters of North Carolina* that "courts routinely deem restrictions on fundamental voting rights irreparable injury[,]" without any mention of the fact that the early voting at issue in the case is not, itself, a constitutional right. 769 F.3d at 247. Other cases hold similarly. *See*, *e.g.*, *Harlan*, 2016 U.S. Dist. LEXIS 132581, at *9-14 (finding an irreparable injury where only voters in large counties would have access to Election Day voter registration); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (finding that college students whose voter registration applications were denied "would certainly suffer irreparable harm if their right to vote were impinged upon," despite the fact that those students could register and vote in their home districts).

9

Defendant Cole cites to *League of Women Voters of North Carolina* to support her argument that Plaintiff and class members have not demonstrated irreparable harm absent an injunction. *See* Def's Resp., at 11-13. Notably, the court did not, as Defendant Cole claims, "determine[ that] the Plaintiffs had failed to establish irreparable injury." *Id.* at 12. Rather, the Fourth Circuit determined that the *District Court had not abused its discretion* in determining that the plaintiffs had not sufficiently demonstrated irreparable harm with regard to the pre-registration of sixteen- and seventeen year-olds, elimination of county board discretion to keep polling places open an additional hour, soft rollout of voter identification requirements, and poll challenger and observation. *League of Women Voters of North Carolina*, 769 F.3d at 236-37. In so doing, the court repeatedly emphasized that the plaintiffs very well may prevail after a full trial on the merits. *See id.* at 236 (With regard to pre-registration, "[t]he district court . . .did not abuse its discretion in determining that, while Plaintiffs could well succeed on this claim at trial, they have not shown that they will be irreparably harmed before trial absent an injunction."); *id.* at 237 (With regard to upholding the elimination county board discretion to stay open later, "this is not to say that Plaintiffs will not ultimately succeed with their challenge to this provision at trial. They simply have not shown irreparable harm for purposes of the preliminary injunction."); *id.* (With regard to the voter identification requirement, "Plaintiffs may well succeed with their challenge to the identification law at trial.")

As the court noted, in *League of Women Voters of North Carolina*, it was bound by the facts as found by the District Court, as long as they were not clearly erroneous. *See id.* at 235. The court also noted its incredulity that these provisions would be upheld after a trial, stating:

> Although we are skeptical as to the ultimate accuracy of this prediction, we cannot say that the district court committed clear error.

> We do not mean to suggest that Plaintiffs cannot prove and eventually succeed on their challenges to all of these provisions when their case goes to trial. Indeed, a proper application of the law to a more developed factual record could very well result in some or all of the challenged House Bill 589 provisions being struck down. At this point in time, however, we hold that, for purposes of a preliminary injunction as to this November's election and based on the facts as found by the district court for the limited purpose of addressing Plaintiffs' request for a preliminary injunction, the district court did not abuse its discretion in determining that Plaintiffs have not shown that the balance of hardships tips in their favor as to early voting or that they will suffer irreparable harm as to the other provisions discussed above.

*Id.* at 237. The voter identification, reduction in early voting, and elimination of same-day voter registration, out-of-precinct voting, and preregistration at issue in *League of Women Voters of North Carolina* have since been permanently enjoined under the Voting Rights Act. *See N.C. State Conf. of the NAACP v. McCrory*, 831 F.3d 204, 239 (4th Cir 2016), *stay denied* 195 L. Ed. 2d 900; 2016 U.S. LEXIS 4448 (2016).

Additionally, Defendant Cole's creation of additional steps for would-be voters to be able to register to vote is itself an irreparable harm. Where a fundamental right is at issue, the state cannot impose additional steps on only certain classes of people. *See Marie v. Mosier*, No. 14-cv-02518-DDC-TJJ, 2016 U.S. Dist. LEXIS 96245, at *42 (July 22, 2016) ("Kansas law permits opposite-sex married couples to list both spouses as parents for children conceived through artificial insemination and born to such couples. It does not require such couples to obtain a judicial order. But defendants apparently believe that the Constitution still permits them to require same-sex couples to take this additional step. It does not.") (internal quotation marks omitted).

### III. The Balance of Hardships Weighs in Plaintiff's Favor.

Defendant Cole's argument that the balance of hardships weighs in her favor is inapposite. Defendant Cole does not dispute that she can easily access the information of each

prospective voter who has used the online voter registration system. Nonetheless, Defendant Cole argues she will be substantially burdened if she is required to "process[] every online application without its contents being verified approximately two weeks before election day." Def's Resp., at 14-15. This assertion is rendered untenable by Defendant Cole's claims that Plaintiff and all putative class members will be duly registered if they complete the additional steps she has created. Why would it create less of a burden for Defendant Cole to register voters who complete her additional steps than it would for her to register qualified voters who used the online system? The only reason this would be the case is if Defendant Cole believes that a vast number of voters will not follow her additional steps, thus leaving them unable to vote on Election Day.

Moreover, it is illogical to suggest that Defendant Cole's system of creating an additional step for both herself and prospective voters creates *less* of a burden than simply registering qualified voters who have submitted their applications online. The fact that the information Ms. Cole requires in the additional process matches that which is given during the online registration process does not make it acceptable—it makes it a redundant exercise that will result in voter disenfranchisement unless corrected.

## CONCLUSION

"While states have a strong interest in their ability to enforce state election law requirements, the public has a strong interest in exercising the fundamental political right to vote. That interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Obama for America*, 687 F.3d at 437.

For the reasons set forth above, Plaintiff respectfully requests this Court grant her emergency motion for a temporary restraining order.

Respectfully submitted this 20th day of October, 2016,

By Counsel,

AMERICAN CIVIIL LIBERTIES UNION OF
     WEST VIRGINIA FOUNDATION

/s/ Jamie Lynn Crofts
Jamie Lynn Crofts
West Virginia Bar No. 12730
ACLU of West Virginia Foundation
P.O. Box 3952
Charleston, WV 25339-3952
(304) 345-9246, ext. 102 / (304) 345-0207 (f)
jcrofts@acluwv.org


Anthony J. Majestro
West Virginia Bar No. 5165
ACLU of West Virginia Foundation
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Dale E. Ho*
Sean J. Young*
American Civil Liberties Union Foundation, Inc.
125 Broad St., 18th Floor
New York, NY 10004
212-549-2693
dale.ho@aclu.org
syoung@aclu.org

*motions for admission pro hac vice pending

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Jamie Lynn Crofts, do hereby certify that on this 25th day of October, 2016, I electronically filed a true and exact copy of this Response in Support of Plaintiff's Emergency Motion for a Temporary Restraining order with the Clerk of Court using the CM/ECF System, with copies provided to:

| | |
|---|---|
| Jacob D. Layne<br>PULLIN FOWLER FLANAGAN BROWN & POE<br>901 Quarrier Street<br>Charleston, WV 25301<br>304/344-0100<br>Fax: 304/342-1545<br>Email: jlayne@pffwv.com | Wendy E. Greve<br>PULLIN FOWLER FLANAGAN BROWN & POE<br>901 Quarrier Street<br>Charleston, WV 25301<br>304/344-0100<br>Fax: 304/342-1545<br>Email: wgreve@pffwv.com |

                                                                                               /s/ Jamie Lynn Crofts