IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

ALLISON MULLINS,
on behalf of herself and
all others similarly situated,

                          Plaintiff,

v.                                                CIVIL ACTION NO.   3:16-9918

KAREN COLE,
in her official capacity as
Clerk of Cabell County,

                          Defendant.

**MEMORANDUM OPINION AND ORDER**

On Thursday, October 20, 2016, Plaintiff Allison Mullins filed a Verified Class Action Complaint against Defendant Karen Cole, in her official capacity as Clerk of Cabell County, West Virginia. With her Complaint, Plaintiff Mullins filed an Emergency Motion for a Temporary Restraining Order (ECF No. 3), and a Motion for Class Certification. ECF No. 5. On Friday, October 21, 2016, Defendant was personally served a copy of the Complaint. The Court also entered an Order notifying Defendant Cole of the action and the pending motions, and directed her to file a Response to the Emergency Motion by noon on Monday, October 24, 2016. The Court set this matter for a preliminary injunction hearing on Tuesday, October 25, 2016. Defendant Cole timely filed her Response, and Plaintiff Mullins filed a Reply prior to the hearing on Tuesday. Upon consideration of the parties' arguments, the Court granted the preliminary injunction.

**I.**
**FACTS**

In West Virginia, the Secretary of State has established a state-wide online voter registration system pursuant to her statutory authority. *See* W. Va. Code § 3-2-5(a)(3) (2016) (authorizing the Secretary of State as the chief election officer to establish an electronic voter registration system). In order to register or update a registration using the online system, a West Virginia resident must have a West Virginia driver's license or state identification card and his or her signature must be on file with the West Virginia Division of Motor Vehicles (DMV) or another approved state database. W. Va. Code § 3-2-5 (setting forth types of information required and requested on voter application forms). In order to complete an application, a resident logs on to the system and answers a series of questions that confirms his or her eligibility to register. If eligible, the resident then completes the application by entering his or her name, address, birthdate, citizenship, driver's license or state identification number, and the last four digits of their social security number. *See* West Virginia Secretary of State, Register to Vote, https://ovr.sos.wv.gov/Register/Landing (last visited Nov. 16, 2017). The applicant's signature is then transferred from the DMV or other approved database.

The filing deadline for registering to vote in West Virginia for the 2016 general election was October 18. Of the fifty-five counties in West Virginia, all but Cabell County allow residents to register using the online system. In Cabell County, however, when a resident attempts to register through the online system, Defendant Cole sends the applicant a letter with a paper registration application to complete. The letter provides:

Dear Voter Applicant,

We just received notice that you have applied to register to vote, make changes to, or update your current voter registration record in Cabell County, through the Secretary of State's website. Unfortunately, this website does not provide the information that is required, by law, to be provided to this office in order to process a voter application.

We are truly sorry for this inconvenience, however, we have enclosed a voter registration form that you will need to complete and mail back to us, in order for us to process your application. The form includes pre-paid postage, so it will be of no cost for you to return.

If you have any questions, or need any assistance, please do not hesitate to contact us at 304-526-8633.

Warmest regards,

/s/ Karen S. Cole

Karen S. Cole
Cabell County Clerk

*Exemplar of Letter* (dated March 21, 2016), ECF No. 1-2. Despite the representations made in the letter, it is undisputed that the paper registration form requires the applicant to provide virtually the same information as the online system. One difference is that the online system requires *both* a driver's license number[1] *and* the last four digits of the applicant's social security number, while the paper registration form only requires the applicant to provide a driver's license number *or* the last four digits of the applicant's social security number. Thus, the online system actually requires more verification than the paper registration form. Another previous difference is that the paper application form had an option to include a phone number and e-mail address, but the online system originally did not have a place to input this information. Defendant Cole testified that a

---

[1]If an applicant does not have a driver's license, the applicant may use an identification number issued by the DMV.

-3-

few months ago the online system began including this information. Additionally, irrespective of whether phone numbers or e-mail addresses were included or not, an applicant is not required to provide this information in order to register. Lastly, an individual completing a paper application must sign the form, whereas the online system transfers the signature from the DMV records or a state approved databank.

At the hearing held on October 25, Defendant Cole testified that her office would accept paper applications after October 18 so long as the applicant completed the online registration process prior to the deadline. In order to be registered or to make changes to a registration, Defendant Cole testified that an applicant could mail the paper registration application back to her office, personally deliver the application to her office, or could take the completed application to his or her polling place, give it to an election official, and then cast a provisional ballot. Defendant Cole concedes, however, there is nothing in the letter she sends with the application that indicates to a would-be voter that he or she may personally deliver the application to her office or take the application to a polling place and vote. The only option set forth in the letter is that it must be mailed back to her office. In addition, although Defendant Cole states she writes the date an applicant applies through the online system on the paper application she sends to would-be voters, there is nothing in the letter that explains the paper registration will be considered timely if it is returned after the October 18 deadline. At the time of the October 25 hearing, Defendant Cole said there were over 2,200 individuals who had attempted to register online in Cabell County who had not yet returned a paper registration application and, therefore, were not registered to vote.

Plaintiff Mullins is a resident of Cabell County who attempted to register using the online system on October 16, two days prior to the deadline. Despite completing the online registration, Plaintiff Mullins was not registered to vote in Cabell County pursuant to Defendant Cole's policy. At the hearing, Plaintiff Mullins testified that she had not yet received a letter from Defendant Cole requiring her to fill out a paper registration application. Therefore, Plaintiff Mullins brought this action on behalf of herself and others to enjoin Defendant Cole from refusing to process the online applications and to issue a mandamus directing her to process the online voter registration applications and changes to voter registrations for all those who are otherwise qualified.

## II.
## STANDARD FOR INJUNCTIVE RELIEF

Although Plaintiff Mullins filed her motion as a request for a temporary restraining order, the Court held a full adversary hearing on the motion. Defendant Cole was served a copy of the Verified Complaint, filed a Response, and was represented by counsel at the hearing. Accordingly, in light of these facts, the circumstances of this case, and given the scarcity of time to rule upon the motion, the Court converted the action into one for a preliminary injunction at the hearing. *See Daly v. Tennant*, Civ. Act. No. 3:16-08981, 2016 WL 6156177 (S.D. W. Va. Oct. 21, 2016) (same).

In deciding whether to issue a preliminary injunction, this Court recognizes as it did in *Daly* that it "is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated*, 130 S. Ct. 2371 (2010), *reinstated in part*, 607 F.3d 355 (4th Cir. 2010) (citations omitted). "Granting the ultimate relief requested, even

temporarily, at an early point in the case, often prior to the issues even being joined in the pleadings, seems rightly reserved for only the most compelling of cases." *Dewhurst v. Century Aluminum Co.*, 731 F. Supp. 2d 506, 514 (S.D. W. Va. 2010) (citation omitted). In order to obtain a preliminary injunction, a party must establish four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). As such, the party seeking to obtain a "preliminary injunction must demonstrate by a *clear showing* that, among other things, it is likely to succeed on the merits at trial." *Dewhurst,* 731 F. Supp. 2d at 515 (italics original; internal quotation marks and citations omitted). In this action, Plaintiff Mullins asserts that she meets these factors.

## III.
## DISCUSSION

"It is beyond cavil that voting is of the most fundamental significance under our constitutional structure." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). "The right to vote freely for the candidate of one's choice is the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Given its most significant importance, "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (citations omitted). The constitution prohibits people from being classified in such a way that it unnecessarily abridges the right to vote. *Wesberry*, 376 U.S. at 17. Thus, when people are classified in disparate ways or when restrictions are placed on voting rights, the Equal Protection Clause is implicated. *Obama for America v.*

*Husted*, 697 F.3d 423 (6th Cir. 2012) (citing *Bush v. Gore*, 531 U.S. 98 (2000); *League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008)).

When a law or rule is challenged, a court must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiffs seek to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). In making its decision, the court must "determine the legitimacy and strength of each of those interests" and "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id*. The court then must weigh all these factors in deciding the constitutionality of the challenged provision. *Id*. When the extent to the asserted injury is slight, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick* 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788-89 n.9). However, if the provision places a "severe" burden on the rights of voters, "the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id*. (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

Utilizing this flexible standard, the Court turns to the facts of this case. As indicated earlier, the online voter registration system was established by the West Virginia Secretary of State as part of her statutory duty as the chief election officer to develop a uniform online registration system throughout the state. Without doubt, its central purpose is to encourage voting, as it is the most basic tenant of our democracy. Essential to this process is registering qualified individuals to cast ballots. For those not registered to vote, the right to vote is meaningless. Here, the ease of

registering to vote using the online registration system has been denied to over 4,500 Cabell County residents.[2] Of those, Plaintiff Mullins, along with over 2,200 other Cabell County residents, were not registered at all because they had not returned paper registration forms to Defendant Cole. Thus, Defendant Cole's decision to not register over 2,200 voters strikes at the very heart of our democratic process, and the Court finds the additional steps a would-be Cabell County voter has to take in order to register places a "severe" burden on them.

In defense of her policy, Defendant Cole asserts that the Secretary of State's online registration system is inadequate. For instance, originally the online system did not have a place for individuals to enter their phone numbers and e-mail addresses, but the paper applications did.[3] However, it is undisputed that including one's phone number and e-mail address is not required in order to register. If that information was not written on a paper application, a qualified applicant still would be registered. *See* W. Va. 3-2-5(d)(5) and (6) (providing that "no application may be rejected for lack of . . . telephone number . . . e-mail address"). Thus, the fact that the online system did not have a place to input this information cannot serve as a basis to deny online registrations.

Defendant Cole also argues that West Virginia Code § 3-2-5(c)(4) gives her total discretion as to whether or not to accept electronically transferred signatures. This provision provides, in part: "The clerk may accept the electronically transmitted signature kept on file with another approved state database for an applicant who applies to register to vote using an approved

---

[2]Defendant Cole testified that 4,661 individuals had used the online system to register or change their registration in Cabell County from October 30, 2015 through October 18, 2016.

[3]As stated earlier, Defendant Cole testified that the online system now includes a place to add this information.

-8-

electronic voter registration system in accordance with procedures promulgated by the Secretary of State." W. Va. § 3-2-5(c)(4), in part. However, the Court finds that Defendant Cole cannot rely upon this statute to refuse all online registrations merely because she does not like electronically transferred signatures. The West Virginia legislature and the Secretary of State already have determined that electronically transferred signatures are sufficient and appropriate for voter registrations. If the Court reads West Virginia Code § 3-2-5(c)(4) so broadly as to allow Defendant Cole to reject *all* electronic signatures based upon her personal preference, it would defeat the government's strong interest in establishing a uniform online voter registration system. Although there may be some reason for a clerk to reject an individual electronically transferred signature on a case-by-case basis, the Court declines to find the statute permits a county clerk to reject every electronically transferred signature without any legitimate justification.

In this regard, although Defendant Cole believes an original signature on a paper application form is superior to transferring a signature from the DMV or other approved database, she offered no legitimate explanation for her belief. In fact, Defendant Cole testified that, once she received a completed paper application, the information on the form is typed into the state-wide voter registration list, and there is no additional verification of the signature performed. Therefore, the fact that a paper application form is signed and mailed to Defendant Cole provides no more indicia of authenticity than a signature maintained on a DMV or other state approved data bank.

Defendant Cole further argues that there is no constitutional right to register online, and Plaintiff Mullins may register if she simply fills out a paper registration form. Although it is true that residents of Cabell County may register or change their registrations by using paper

-9-

applications, voters in every other county in West Virginia are not required to take this additional step, defeating the uniformity and ease of the online system established by the Secretary of State. In fact, the character and magnitude of the burden Defendant Cole's policy has placed on would-be voters is significant, and it has proven to be obstacle to over 2,200 individuals who have attempted to register online, but who have remained disenfranchised and unable to vote as of the date of the October 25 hearing.

Further troubling on this front is that Plaintiff Mulllins testified that she believed she had successfully registered when she completed the online application. Online applicants in Cabell County have no way of knowing that they need to monitor their mail for a paper application in order to complete their registrations. For those who do notice the form in the mail, the Court finds there also is a great potential for voter confusion.

First, the letter sent to voters is inaccurate. It states that the Secretary of State's "website does not provide the information that is required, by law, to be provided to this office in order to process a voter application." *Exemplar of Letter* (dated March 21, 2016), ECF No. 1-2. However, this statement is patently untrue. The website requests all the required information. In fact, by requiring an individual to enter both his or her driver's license or state identification number and the last four digits of the individual's social security number, the website requires more information than a paper application. A would-be voter reviewing the paper application could easily recall that he or she provided this exact same information online, but there is nothing in the letter that explains why Defendant Cole believes the information is sufficient. An applicant may

-10-

decide not to return the paper application because there is simply nothing he or she can add to what already has been provided. In that instance, the individual remains unregistered and unable to vote.

Second, Defendant Cole concedes there is nothing in the letter that informs applicants that if they received the letter after the October 18 deadline, or do not have the opportunity to complete and return the paper application before the deadline, they will be considered registered as of the date of their attempted online registration if they return the form prior to the election. Similarly, although the letter states the form must be mailed back, Defendant Cole testified that an applicant personally may deliver the form to her office or take it to the appropriate polling place and cast a provisional ballot. Again, however, there is no information provided to applicants that either of these choices are viable options. Thus, there is a high likelihood that online applicants in Cabell County will be confused about whether they can vote or not if they return a paper application after the October 18 deadline.

In considering all the above factors and balancing the reasoning of the policy against the character and magnitude of the injury, the Court has no difficulty finding the policy results in an unconstitutional burden on the right of Cabell County voters to vote. Without doubt, the would-be voters of Cabell County who attempted to register online face a significant injury if they fail to complete the additional and unnecessary steps required by Defendant Cole. When this significant injury is weighed against the very weak interest Defendant Cole has in maintaining the policy, it is clear that the policy cannot survive. Although the Court finds that Defendant Cole acted under her good faith belief that paper applications are somehow better than the online system, her personal beliefs do not outweigh the disparate treatment and disenfranchisement that resulted

-11-

to thousands of Cabell County residents. Certainly, the geographical disparity created by this policy between residents of Cabell County and rest of West Virginia violates the Equal Protection Clause. *See, e.g, Bush v. Gore*, 531 U.S. 98 (2000) (per curiam) (finding that a recount of votes in Florida without adequate state-wide safeguards to ensure that the recount procedure was uniform from county to county did not comport with the minimum equal protection and due process requirements).

## IV.
## CONCLUSION

Accordingly, the Court finds Plaintiff Mullins has made a clear showing that: (1) she is likely to succeed on the merits; (2) without immediate Court intervention, there is likely to be irreparable harm to would-be voters who attempted to register online but who did not complete a paper application as they would be prevented from voting in the general election; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest as it protects the fundamental right to vote. Thus, as stated at the hearing and in the Court's Order entered on October 25, 2016, the Court **GRANTS** the Preliminary Injunction.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:       November 21, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE

-12-